IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NATIONAL SURETY CORPORATION, <br><br> Plaintiff, <br><br> v. <br><br> LAMORAK INSURANCE COMPANY, <br><br> Defendant. | Case No. 1:17-cv-3455 <br><br> Judge: Sara L. Ellis <br><br> Magistrate Judge: Jeffrey Cole |

**JOINT LOCAL RULE 56.1(a)(3) STATEMENT OF MATERIAL
FACTS AS TO WHICH THERE IS NO GENUINE ISSUE**

Plaintiff National Surety Corporation ("National Surety") and Defendant Bedivere Insurance Company, incorrectly sued as Lamorak Insurance Company, ("Bedivere") submit their Joint Rule 56.1(a)(3) Statement of Material Facts ("Joint Statement") as to which there is no genuine issue in support of their respective Motions for Summary Judgment. The Parties' Joint Statement also includes a description of the Parties and all facts supporting this Court's venue and jurisdiction pursuant to LR 56.1(a)(3)(A) & (B).

**I.    THE PARTIES AND THE COURT'S VENUE AND JURISDICTION**

1. National Surety is an insurance corporation organized and existing under the laws of the State of Illinois with its principal place of business located in Chicago, Illinois.

**Source: National Surety Corporation Excerpt from the Website of the Illinois Department of Insurance, attached as Exhibit 1.**

2. Bedivere Insurance Company, formerly known as OneBeacon Insurance Company, and successor to General Accident Insurance Company ("General Accident"), is an insurance

corporation organized and existing under the laws of the Commonwealth of Pennsylvania with its principal place of business located in Philadelphia, Pennsylvania.

**Source: Bedivere Insurance Company Excerpt from the Website of the Illinois Department of Insurance, attached as Exhibit 2.**

3. Jurisdiction is proper in this Court, pursuant to 28 U.S.C. §1332(a), because the plaintiff and defendants are citizens of different states and the amount in controversy exceeds $75,000 exclusive of interest and costs.

**Source: Plaintiff's Amended Complaint (Dkt. 6), attached as Exhibit 3, at ¶2-4; Bedivere's Amended Answer and Affirmative Defenses (Dkt. 38), attached as Exhibit 4, at ¶2-4; Joint Statement, supra at ¶1; Joint Statement, infra at ¶30.**

4. Venue is proper in this District, pursuant to 28 U.S.C. §1391(b)(2), because a substantial part of the events giving rise to the claim alleged here occurred within this District.

**Source: Exhibit 3, at ¶5; Exhibit 4, at ¶5; Joint Statement, ¶1, supra; Joint Statement, ¶17, infra; Joint Statement, ¶50, infra.**

## II. RESINOID AND ITS PRODUCTS AT ISSUE

5. Resinoid manufactures and sells phenolic material compounds and phenolic moldings found in commutators and various custom moldings, which are primarily used in the automotive aftermarket industry as well as additional household applications.

**Source: Resinoid Engineering Corporation background information from the Resinoid Website, attached as Exhibit 5; National Surety Asbestos 120 Day Report for Resinoid, attached as Exhibit 6 (previously marked as Exhibit 5 to deposition of Richard Harris), at NSCLM006298.**

6. Resinoid manufactures phenolic materials at a facility in Skokie, Illinois which are supplied to Resinoid divisions in Ohio that manufacture slip rings, commutators, and custom moldings.

**Source: Exhibit 5; 10/6/2015 Report to Insurers from defense counsel Edward Matushek re: Walter Ciokajlo – Ohio Meso Claim, attached as Exhibit 7, at NSCLM004225.**

7. Resinoid has operated one manufacturing facility in Skokie, Illinois, and two manufacturing facilities in Ohio, one in Hebron, Ohio and another in Heath, Ohio.

**Source: Exhibit 7, at NSCLM004225.**

8. At all relevant times, Resinoid has been considered to be a domestic corporation by the Illinois Secretary of State and a foreign corporation by the Ohio Secretary of State.

**Source: Illinois Secretary of State Domestic Corporation Annual Reports and Ohio Secretary of State Annual Reports, attached as Exhibit 8.**

9. Since at least 1994, Resinoid has listed "P.O. Box 2264, Newark, Ohio" as the mailing address for its corporate headquarters, which continuously have been located in Ohio since at least that time.

**Source: 1994 Insured Statement of Values, attached as Exhibit 9, at NSC-UW01753; 1995 Insured Statement of Values, attached as Exhibit 10, at NSC-UW01543; 1999 Insurance Application of Resinoid to National Surety, attached as Exhibit 11, at NSC-UW00432.**

10. ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

**Source: Exhibit 7, at NSCLM004225.**

11. ███████████████████████████████████████████████████████████

███████████████████████████████████████████████

**Source: Id.**

### III. THE UNDERLYING CIOKAJLO ACTION

12. The Amended Complaint in the Underlying Action of *Ciokajlo v. Resinoid Engineering,* Court of Common Pleas, Cuyahoga County, Ohio, Case No. 846816 alleges that underlying plaintiff Walter Ciokajlo ("Ciokajlo") was exposed to asbestos manufactured by various companies including Resinoid Engineering Corporation ("Resinoid") while employed by Cleveland Commutator Company (also known as Kirkwood) from 1976 to 2001, and thereafter developed mesothelioma.

**Source: Exhibit 3, at ¶1, 6.**

13. In the Underlying Action, Ciokajlo complained of exposure to Resinoid asbestos-containing products, which were sold to Kirkwood.

**Source: Id., at ¶6.**

14. Ciokajlo was first diagnosed with mesothelioma in January 2015 after suffering from respiratory problems that began in November or December 2014.

**Source: Stipulation as to Certain Facts, attached as Exhibit 12, at ¶1.**

15. Prior to an incident in November or December 2014 in which he first experienced symptoms of respiratory problems such as shortness of breath, Ciokajlo has testified that he is not aware of having respiratory problems.

**Source: Id., at ¶2.**

4

16. Ciokajlo's exposure to asbestos-containing molding compounds and molded commutators manufactured and/or sold by Resinoid took place exclusively while he was employed at a Kirkwood facility located in Cleveland, Ohio.

**Source: Id., at ¶4.**

17. Resinoid's national coordinating counsel, Edward Matushek, reported to insurer representatives on October 6, 2015:

[redacted]

**Source: Exhibit 7, at NSCLM004225.**

18. Resinoid settled the Underlying Action on March 28, 2017 for a confidential amount.

**Source: Exhibit 4, at ¶9.**

19. National Surety, which insured Resinoid under commercial general liability policies between August 1, 1994 and August 1, 2000, advanced funds to effectuate the settlement of the Underlying Action. Bedivere, whose predecessor General Accident insured Resinoid between December 31, 1979 to December 31, 1989, also advanced funds toward the settlement. The funds were advanced pursuant to a confidential Interim Settlement Funding Agreement between National Surety and Lamorak Insurance Company, which was amended in 2018 to substitute Bedivere for Lamorak, in which National Surety reserved its right to recoup from Lamorak the amount National Surety paid based on their respective obligations as determined by a court of competent jurisdiction. The Agreement provides that neither insurer will argue that the other paid as a volunteer.

**Source: Interim Settlement Funding Agreement, as amended, redacted copy attached as Exhibit 13 (previously marked as Exhibit 6 to deposition of James Gardner).**

20. In July 2015, Ciokajlo, a resident of Ohio, filed an Amended Complaint in the Circuit Court of Cuyahoga County, Ohio identifying Resinoid as a defendant in that action.

**Source: Exhibit 43, at ¶1.**

21. Ciokajlo alleged that he was suffering from mesothelioma due to exposure to airborne asbestos fibers and that he had been exposed to asbestos from products manufactured by Resinoid while working at Kirkwood at its Cleveland, Ohio manufacturing facility.

**Source: Id., at ¶57-58.**

22. Ciokajlo worked at Kirkwood in Cleveland from 1976 to 2001.

**Source: Id., at ¶57-58; Exhibit 7, at NSCLM004218.**

23. Resinoid and its insurers confirmed that Ciokajlo likely may have been exposed to asbestos from Resinoid's asbestos-containing molding compounds and molded commutators while he worked at Kirkwood in Cleveland until, at the latest, 1986.

**Source: Exhibit 12, at ¶3.**

24. After the insurers' claim representatives conducted a conference call with Resinoid's defense counsel about the merits of Ciokajlo's claim against Resinoid in December 2016, Richard Harris, the National Surety claim representative handling the Resinoid account, offered to "circulate a potential indemnity cost-sharing for this case" to the other insurers.

**Source: 2/28/2017 Email correspondence between James Gardner, Richard Harris, John Weiss, and Amy Howard re: Ciokajlo Asbestos Claim - Resinoid, attached as Exhibit 14, (previously marked as Exhibit 11 to deposition of Richard Harris), at NSCLM009832-33.**

25. Harris' proposed cost-share for the allocation of any settlement of the Ciokajlo claim was based upon the participation of all available policies in effect from the date of first exposure through the diagnosis of Ciokajlo's asbestos-related disease or the last period of available coverage; under this allocation, Harris proposed that National Surety's share of any settlement of the Ciokajlo claim would be 32.29%.

**Source: Id., at NSCLM009832.**

26. On February 17, 2017, National Surety advised Resinoid and the other insurers that it would potentially be relying on an endorsement contained in its policy to contend that the National Surety policies were "excess to any other collectible liability insurance that provides coverage for this loss and any other losses."

**Source: 2/17/2017 Allianz Resolution Management letter to Resinoid re: Various claimants and lawsuits, attached as Exhibit 15, (previously marked as Exhibit 13 to deposition of Richard Harris), at NSCLM000002.**

27. On March 17, 2017, National Surety advised Resinoid and its other insurers that it was National Surety's position that its policies likely are not triggered by the Ciokajlo claim because no "bodily injury" took place during its policies' periods.

**Source: 3/17/2017 Allianz Resolution Management letter to Resinoid re: *Ciokaljo v. Kirkwood Industries Inc., et al.*, attached as Exhibit 16, (previously marked as Exhibit 6 to deposition of Richard Harris), at NSCLM009439.**

28. This coverage position advanced by National Surety was based upon in part the following:

> To this end, the facts obtained in the defense of the Underlying [Ciokajlo] Lawsuit indicate that in and around 1984 or 1985, Plaintiff was last exposed to Resinoid's asbestos-containing products. FFIC's Primary Policies incepted as of August 1, 1994 and expired on August 1, 2000.

7

> FFIC is not aware of any evidence of "bodily injury" i.e., exposure to Resinoid's asbestos-containing product during the August 1, 1994 to August 1, 2000 period. Similarly, FFIC is not aware of any evidence of sickness, i.e. ill-health or a weakened or unsound condition related to asbestos exposure during this period. Finally, Plaintiff's mesothelioma was diagnosed in January 2015. Thus, his disease was after the expiration of the Primary Policies.

**Source: Id.**

29. On March 22, 2017, Harris sent an email to Resinoid's defense counsel providing:



**Source: 3/22/2017 Email correspondence from Richard Harris to Ed Matushek, Amy Howard, James Gardner, Lauren Waidzunas, and Piero Cozza re CIOKALJO v. RESINOID, attached as Exhibit 17, (previously marked as Exhibit 16 to deposition of Richard Harris), at NSCLM009811.**

30. On March 28, the Ciokajlo case settled for ▮▮▮▮▮▮.

**Source: National Surety Case Progress Notes, attached as Exhibit 18, (previously marked as Exhibit 3 to deposition of Richard Harris), at NSCLM000131.**

31. On June 8, 2017 (amended by the parties in September 2018), Bedivere and National Surety entered into an Interim Settlement Funding Agreement under which National Surety was to pay a 32.29% share of the Ciokajlo settlement ▮▮▮▮▮▮ to resolve the claim.

**Source: Exhibit 13.**

### IV. THE PARTIES' HANDLING OF RESINOID'S ASBESTOS CLAIMS

32. The very first asbestos claim filed against Resinoid was filed by Darrell Christian in the Circuit Court of Cuyahoga County, Ohio in 2003.

**Source: Initial Notice Letter, attached as Exhibit 19, at NSCLM007342.**

33. Since 2003, hundreds of additional asbestos-related lawsuits have been filed against Resinoid in various jurisdictions throughout the country, including Michigan, Ohio, Illinois, Delaware, Missouri, and Texas.

**Source: Exhibit 18, at NSCLM000072, NSCLM000079.**

34. The predecessor to Lamorak's third party administrator, Resolute, subject to the authority of Resinoid's other insurers, hired Edward Matushek to be national coordinating counsel overseeing all asbestos bodily injury claims filed against Resinoid.

**Source: Deposition of James Gardner ("Gardner Dep."), pp. 9, 87-8, attached as Exhibit 20.**

35. Resinoid's historical insurers, including National Surety and Bedivere (previously participating on behalf of General Accident as OneBeacon), agreed to fund the defense of Resinoid pursuant to an informal cost sharing arrangement between all insurers.

**Source: 3/1/2005 Email correspondence from Christopher Dardis to Kenneth Cook, Robert Solano, Shawna Hagan, and Eric Paulsen re Resinoid Engineering – revised cost sharing percentages, at NSCLM009272, attached as Exhibit 21 (previously marked as Exhibit 8 to deposition of Richard Harris).**

36. Because of the general nature of the complaints' allegations, this informal cost-sharing arrangement was based upon the period of time each insurer provided coverage to Resinoid and, under this informal arrangement, National Surety paid 18.4% of Resinoid's defense costs and Bedivere paid 73.7% of the defense costs.

**Source: Exhibit 21; Exhibit 18, at NSCLM000045.**

37. The insurers for Resinoid have paid to settle only two Resinoid asbestos claims, Christian and Ciokajlo.

**Source: Deposition of Richard Harris ("Harris Dep"), at pp. 33, 76, attached as Exhibit 22.**

38. Christian also was exposed to Resinoid's asbestos-containing molding compounds while he worked at the Kirkwood facility in Cleveland, Ohio.

**Source: 10/19/2004 Baker and Hostetler Interim Status Report re Darrell E. Christian, attached as Exhibit 23, at NSCLM008036-8039; 11/13/2007 Email correspondence from Andrew Fantasia to James Fry re Christian claim, attached as Exhibit 24, at NSCLM007991; Exhibit 18.**

39. Christian worked at the Kirkwood facility from 1978 until 1998.

**Source: Exhibit 23, at NSCLM008036; Exhibit 24, at NSCLM007991.**

40. Claim notes maintained by the National Surety claim representative while the insurers' were evaluating whether to settle the Christian case indicate that National Surety understood that: (a) Christian's apparent exposure to Resinoid's asbestos-containing molding compounds at Kirkwood took place from 1978 to, at the latest, 1986; (b) Resinoid first began selling asbestos-containing molding compounds to Kirkwood in 1973; and (c) Resinoid ceased shipping asbestos-containing materials to Kirkwood in approximately 1985.

**Source: Exhibit 18, at NSCLM000083; Exhibit 24, at NSCLM007993-7995.**

41. Resinoid and its insurers agreed to settle the Christian matter in 2007 for ▓▓▓▓▓▓ with the insurers fully funding the settlement based upon a pro rata cost sharing arrangement. National Surety agreed to pay a 34.1% share of the settlement and subsequently paid ▓▓▓▓▓▓ to resolve the case on behalf of Resinoid.

**Source: Exhibit 18 at NSCLM000084; Exhibit 24 at NSCLM007990.**

42. The Christian settlement was allocated between the insurers based upon the date of Christian's first exposure to Resinoid's products, 1978, and the date of the expiration of the last insurance policy that provided coverage to Resinoid for its asbestos claims, 2000.

**Source: Exhibit 24, at NSCLM007991.**

43. National Surety maintained contemporaneous claim notes for its handling of the Resinoid account and the claim notes dated September 2006 include the following:

> Choice of Law: Policies were issued in Ohio, which is where Insured was principally located at the time of the policy issuance. Insured is now located in Illinois. For purposes of Coverage issues, will presume Ohio law would apply.
>
> Coverage Trigger: Continuous – All policies in effect from initial exposure until diagnosis or death are triggered, and each triggered policy is obligated to pay in full the claim, subject to policy limits.
> …
> Allocation of Loss: Pro Rata – There is a rebuttable presumption that all exposure prior to diagnosis contributed equally to injury-in-fact. There is no case law that requires the insured to participate for bare years.

**Source: Exhibit 18 at NSCLM000071-0072.**

44. On July 10, 2003, National Surety advised Resinoid, with respect to a lawsuit that predated the Underlying Action:

> Fireman's Fund Insurance Company's ("Fireman's Fund") [National Surety's affiliate writing with respect to the National Surety policies] position is that its policies will only respond to damages because of bodily injury, sickness or disease which actually results during the policies' periods, and that it not respond for damages because of bodily injury, sickness or disease which results outside of the policies' periods from a cause which takes place during the policies' periods.

**Source: 07/10/2003 Reservation of Rights, attached as Exhibit 25, at NSCLM006156.**

11

45. On July 29, 2003, National Surety advised Resinoid with respect to a different asbestos bodily injury lawsuit that predated the Underlying Action:

> In situations where bodily injury occurs from a cumulative or intermittent exposure to conditions over a period of time, it is Fireman's Fund's position that its policies will only pay for damages for bodily injury which actually occur during its policy period. Fireman's Fund will not respond for damages because of bodily injury which occurs outside its policy period even though the injuries might stem from a cause that takes place during its policy period. Therefore, Fireman's Fund reserves the right to decline to pay damages for bodily injury which did not occur during the policy period.
>
> \* \* \*
>
> **Rather than drafting a separate reservation of rights and partial disclaimer letter upon receipt of each additional complaint alleging exposure to asbestos or asbestos containing products, we are proposing that this letter serve as a general reservation of rights and partial disclaimer letter covering the suit received to date as well as any which may be received in the future. If we do not hear from you to the contrary, we will presume this to be the case.**
> (Emphasis supplied.)

**Source: 7/29/2003 Letter to Resinoid re William E. Glassford Jr. Asbestos Claim, attached as Exhibit 26, at NSCLM007331-7333.**

46. On May 12, 2006, National Surety sent Resinoid a reservation of rights letter addressing multiple asbestos litigation matters then pending in Illinois, Michigan, Ohio and Delaware against Resinoid. Again, National Surety advised Resinoid that it reserved the right to preclude coverage under the policies for "bodily injury" occurring outside the policy periods.

**Source: 5/12/2006 Letter to Resinoid asserting an Additional Reservation of Rights, attached as Exhibit 27.**

47. On March 17, 2017, National Surety wrote to Resinoid reserving rights specifically with respect to the Ciokajlo action. Once again, National Surety expressly advised

12

Resinoid that National Surety reserved the right to deny coverage for "bodily injury" not occurring during the National Surety policy periods:

> The Primary Policies provide coverage only for "bodily injury" that occurs during the policy period. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time. To the extent Plaintiff's "bodily injury" did not occur during the respective policy periods of the Primary Policies, they are not implicated.

**Source: 3/17/2017 Supplemental Coverage Letter, attached as Exhibit 28, at LIC 032314.**

### V. THE NATIONAL SURETY AND GENERAL ACCIDENT POLICIES

48. National Surety issued six consecutive primary commercial general liability policies to Resinoid for the annual periods beginning on August 1, 1994 and concluding on August 1, 2000.

**Source: 8/1/1994-8/1/1995 National Surety policy documents, attached as Exhibit 29; 8/1/1995-8/1/1996 National Surety policy documents, attached as Exhibit 30; 8/1/1996-8/1/1997 National Surety policy documents, attached as Exhibit 31; 8/1/1997-8/1/1998 National Surety policy documents, attached as Exhibit 32; 8/1/1998-8/1/1999 National Surety policy documents, attached as Exhibit 33; 8/1/1999-8/1/2000 National Surety policy documents, attached as Exhibit 34.**

49. The named insured on the National Surety policies is listed as "Resinoid Engineering Corporation, Herbst Corporation" and the mailing address for the named insured listed on the policies is "P.O. Box 2264, Newark, OH 43055-2264."

**Source: Exhibit 29, at NSC-UW01678; Exhibit 30, at NSC-UW01385; Exhibit 31, at NSC-UW01088; Exhibit 32, at NSC-UW00796; Exhibit 33, at NSC-UW00646; Exhibit 34, at NSC-UW00002.**

50. During the years that National Surety insured Resinoid, it was standard practice for two copies of each of the policies to be sent by National Surety to the office of Resinoid's broker, Alper Services, in Chicago. Alper then sent a copy of each policy to Resinoid at the address found on the policies in a binder, retaining the second policy.

**Source: Declaration of Christopher Breck, attached as Exhibit 35, at ¶5.**

51. Christopher Breck, who was an Alper customer service representative servicing the Resinoid account during the entire period the National Surety policies were in effect, was not aware of National Surety sending copies of any of the policies directly to Resinoid.

**Source: Id., at ¶6.**

52. Mr. Breck serviced the account under the supervision of Russell Cortino, a senior producer at Alper who was primarily responsible for the account, and who has since retired and passed away.

**Source: Id., at ¶4.**

53. National Surety has produced at least one certified mail return receipt confirming that National Surety mailed communications regarding its policies directly to Resinoid at the address listed on the declarations pages of the policies located in Newark, Ohio.

**Source: Exhibit 33, at NSC-UW00710-0711.**

54. In addition to the commercial general liability coverage provided by the National Surety policies, the National Surety policies further provide business auto and garage and truckers' coverage.

**Source: See, e.g., Exhibit 29, at NSC-UW01679-1681.**

55. The National Surety policies list five "Locations of Premises" applicable to coverages found in the policies. Of those five locations for which coverage is provided under the

National Surety policies, three are identified as being located in Ohio (Hebron, Ohio and two locations in Heath, Ohio), one is identified as being located in Illinois (Skokie), and one is listed as being located in Colorado (Arvada, Colorado).

        **Source: Exhibit 29, at NSC-UW01684; Exhibit 34, at NSC-UW00004.**

    56. The National Surety policies further provide a schedule of automobiles covered under the policies, which specifically identify the vehicles and the location where they are garaged. Although the actual number of vehicles varied during the six-year period of National Surety's policies, the vast majority of vehicles for which coverage was obtained from National Surety were garaged in Ohio. For example, the vehicle schedule for the 1999-2000 National Surety policy identifies seven vehicles covered under the policy, six of which are garaged at Resinoid's facility in Newark, Ohio and one of which is garaged in Barrington, Illinois.

        **Source: Exhibit 34, at NSC-UW00061.**

    57. Documents produced by National Surety regarding the placement of the National Surety policies reflect that the insured's address for purposes of Resinoid's submissions to National Surety for the underwriting of those policies is P.O. Box 2264 in Newark, Ohio.

        **Source: Premium Audit Reports, attached as Exhibit 36, at NSC-UW00277, NSC-UW00279, NSC-UW00282, NSC-UW00284, NSC-UW00286; 1994 Statement of Values, attached as Exhibit 37, at NSC-UW01753; 1995 signed Statement of Values, attached as Exhibit 38, at NSC-UW01543; 1997 Statement of Values, attached as Exhibit 39, at NSC-UW00952; 1995 Commercial Insurance Application, attached as Exhibit 40, at NSCLM001361; 1999 Commercial Insurance Proposal, attached as Exhibit 41, at NSC-UW00432.**

58. The National Surety policy documents also contain countersignature records, which identify the "Risk State" for the National Surety policies as Ohio.

**Source: See, e.g., Exhibit 34, at NSC-UW00063.**

59. National Surety issued to Resinoid six consecutive primary insurance policies containing commercial general liability coverage covering policy periods from August 1, 1994 to August 1, 2000 which provide coverage for damages because of "bodily injury" where such "bodily injury" occurs during the policy period.

**Source: Copies of declarations pages and certain provisions of the policies, attached as Exhibit 42.**

60. The National Surety policies define "bodily injury" as "bodily injury, sickness or disease sustained by a person . . .."

**Source: Exhibit 42, at NSC-UW01993, NSC-UW02032, NSC-UW02072, NSC-UW02113, NSC-UW02168, NSC-UW02229.**

61. The National Surety policies provide Resinoid with general liability coverage that includes coverage for liability relating to products/completed operations and the policies were not issued with an exclusion for asbestos-related risks. In the Insuring Agreement, National Surety agrees to "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage'" to which the insurance applies.

**Source: Exhibits 29-34; Exhibit 42, at NSC-UW02220.**

62. The policies further state that the insurance only applies to "bodily injury" if the "'bodily injury' or 'property damage' occurs during the policy period."

**Source: Id.**

16

63. The National Surety policies define "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."

**Source: Id., at NSC-UW02229.**

64. For the time period involved in the Ciokajlo claim, General Accident additionally has acknowledged sufficient secondary of evidence to establish coverage seven additional annual policy periods such that the relevant period of General Accident coverage for the Ciokajlo claim at issue is the ten-year period of December 31, 1979 to December 31, 1989.

**Source: Exhibit 21, at NSCLM009272.**

65. General Accident issued to Resinoid consecutive primary insurance policies containing commercial general liability coverage covering policy period from December 31, 1979 through December 31, 1989. These policies provide coverage for damages because of "bodily injury" where such "bodily injury" occurs during the policy period.

**Source: Exhibit 20, at pp. 14-15.**

66. Attached as Exhibit 44 are various documents maintained by National Surety in its files.

**Source: Letter from Fireman's Fund to Resinoid, accompanying documents, and envelope, previously marked as Exhibit 20 to the deposition of Richard Harris, attached as Exhibit 44.**

67. Resinoid discontinued its sale of asbestos-containing molding compounds and molded commutators by 1986.

**Source: Exhibit 12, at ¶3.**

17

Respectfully Submitted,

By: /s/ Jason R. Schulze
    Scott M. Seaman
    Jason R. Schulze
    Hinshaw & Culbertson LLP
    151 N. Franklin Street
    Suite 2500
    Chicago, IL 60606
    (312) 704-3000
    *Attorneys for Defendant Bedivere Insurance Company*

By: /s/ Rory T. Dunne
    Rory T. Dunne
    Alan M. Posner
    Karbal, Cohen, Economou, Silk & Dunne, LLC
    150 S. Wacker Drive, #1700
    Chicago, IL 60606
    312-431-3700
    *Attorneys for Plaintiff National Surety Corporation*

**CERTIFICATE OF SERVICE**

       I hereby certify that on this 11th day of October, 2018, I electronically filed a redacted version of **Joint Local Rule 56.1(a)(3) Statement of Material Facts as to Which There is No Genuine Issue** with the clerk of the court using the CM/ECF system which will send a notice of electronic filing to the following counsel of record; an unredacted version to be hand delivered Judge Ellis and emailed to counsel of record listed below:

Rory T. Dunne
Alan M. Posner
Karbal, Cohen, Economou, Silk & Dunne, LLC
rdunne@karballaw.com
aposner@karballaw.com

                                                  /s/ Jason R. Schulze